**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORFOLK SOUTHERN** | **:** | **CIVIL ACTION** |
| **RAIILWAY COMPANY** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **G.W.S.I., INC.** | **:** | **NO. 16-2094** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                           **September 18, 2018**

Norfolk Southern Railway Company ("Norfolk Southern") moves for reconsideration of the ruling, applying Pennsylvania law, that it was estopped from charging demurrage to the defendant, GWSI, Inc.  For the first time in this litigation, it argues that federal law governs the entire dispute and that demurrage charges pursuant to a rail carrier's tariff are not subject to state law, including the equitable defenses of waiver and estoppel.  Although Norfolk Southern concedes that state law governs disputes over private contracts between the parties, it argues that state law contract defenses do not apply.

Under Rule 59(e), Norfolk Southern has waived its right to assert these arguments post-judgment.  Even if it had not waived this new argument, we would deny the motion because there was no clear error of fact or law in applying equitable estoppel.

**Background**

Throughout the course of this litigation, Norfolk Southern relied on Pennsylvania law to argue that GWSI failed to establish the defenses of waiver and estoppel.  In three pre-trial filings – its pre-trial memo, reply in support of summary judgment and proposed

findings of fact and conclusions of law, and in its supplemental proposed findings of fact and conclusions of law submitted after trial, Norfolk Southern presented facts and legal standards addressing the defenses of waiver and estoppel.  It did not, at any point prior to the entry of judgment, argue that the state law defenses were not available to the defendant.

Although it is true that Norfolk Southern brought its claim against GWSI for accrued demurrage[1] charges pursuant to its demurrage tariff, GWSI asserted several affirmative defenses in its answer that were based on state contract law.[2]  These affirmative defenses included claims that there was a separate demurrage agreement independent of the tariff, waiver and estoppel.[3]  In its summary judgment motion, Norfolk Southern acknowledged that GWSI had raised the affirmative defense that there was an independent agreement between the parties that Norfolk Southern would not charge GWSI demurrage for the time period in question.[4]  It did not assert that GWSI was not permitted to raise the existence of an independent agreement as an affirmative defense.[5]

In response to Norfolk Southern's summary judgment motion, GWSI specifically addressed the affirmative defenses of estoppel and waiver.  After stating the legal standards under Pennsylvania law for establishing these defenses,[6] GWSI made factual and legal arguments in support of them.  GWSI argued that Norfolk Southern waived its

---

[1]  Demurrage is a charge for the expenses incurred by rail carriers when rail cars are detained beyond a specified period of time (i.e., free time) for loading or unloading.  49 C.F.R. § 1333.1.

[2]  Doc. No. 5 at 2, 4.

[3]  *Id.*

[4]  Doc. No. 21-1 at 2, 10.

[5]  *Id.*

[6]  *See* Doc. No. 28 at 11, 13.

right to collect demurrage from GWSI based on Norfolk Southern's conduct and representations to GWSI while it was pursuing potential business opportunities from GWSI and trying to protect its existing accounts. The specific conduct alleged included Norfolk Southern's failure to inform GWSI that the earlier agreement to waive demurrage fees was limited in time; its representation to GWSI that, if necessary, it would "temporarily embargo all shipments on NS to prevent shippers from overwhelming [its] capacity;" and Norfolk Southern's continuing to deliver railcars bound for GWSI despite GWSI's request of Norfolk Southern to stop transporting railcars to GWSI's facility if it intended to charge GWSI demurrage.[7] With respect to its equitable estoppel defense, GWSI argued that, based on that conduct and Norfolk Southern's representations, Norfolk Southern induced GWSI to believe that it had agreed to waive demurrage, on which it relied to its detriment by accepting railcars that it reasonably believed would not be subject to demurrage.[8]

In fact, in its pretrial memo, and repeated twice in its reply in support of summary judgment and its proposed findings of fact and conclusions of law, Norfolk Southern expressly stated that GWSI had "abandoned" its argument that the parties had an "independent agreement" to waive demurrage, but instead was "now relying upon the affirmative defenses of implied waiver and estoppel" brought under Pennsylvania law.[9] Again, Norfolk Southern did not contend that GWSI was not permitted to raise these defenses. Instead, it argued that GWSI *failed* to meet the evidentiary standards

---

[7] *Id.* at 7, 9, 12.

[8] *Id.* at 10, 14.

[9] *See* Doc. No. 31 at 9; Doc. No. 33 at 2 & n.2; Doc. No. 37 at 8 ¶¶ 53−54, 11−12.

required *to establish the elements of these defenses*.[10]  Specifically, Norfolk Southern stated that, under Pennsylvania law, "GWSI must be able to prove its implied waiver and estoppel defense by clear, unequivocal evidence of decisive action by Norfolk Southern. . . . [and] must establish that Norfolk Southern acted 'intentionally' or with "culpable negligence.'"[11]  It then argued that "because Norfolk Southern repeatedly demanded payment of the charges at issue" at all relevant times, "the evidence upon which GWSI relies does not even come close to meeting this burden and fails as a matter of law."[12]

At trial, and in their supplemental proposed findings of fact and conclusions of law submitted post-trial, Norfolk Southern and GWSI repeated the same factual and legal arguments they had made in their pre-trial submissions.  GWSI continued to argue that, based on Norfolk Southern's conduct and representations to GWSI, Norfolk Southern impliedly waived its right to collect demurrage from GWSI, and that Norfolk Southern should be estopped from asserting that the earlier agreement to waive demurrage did not extend to the later time period in question.[13]  In its supplemental proposed findings of fact and conclusions of law, Norfolk Southern again argued that "GWSI has failed to satisfy its substantial evidentiary burden of proving its implied waiver and estoppel defense by clear, unequivocal evidence of decisive action by Norfolk Southern," and that it "failed to present any evidence that Norfolk Southern acted intentionally or with culpable negligence."[14]

---

[10] Doc. No. 31 at 9; Doc. No. 33 at 2−3; Doc. No. 37 at 12.

[11] Doc. No. 33 at 2−3; Doc. No. 31 at 9−10; Doc. No. 37 at 11−12.

[12] Doc. No. 31 at 9; Doc. No. 33 at 3; Doc. No. 37 at 12.

[13] *See* Doc. No. 51 at 28−35.

[14] Doc. No. 52 at 14, 16.

After trial, judgment was entered in favor of GWSI and against Norfolk Southern. We ruled that Norfolk Southern was estopped from charging demurrage to GWSI. Our analysis began with 49 U.S.C. § 10746 and 49 C.F.R. §§ 1333.2 and 1333.3, which provide that interstate rail carriers may assess demurrage from a receiver of railcars. The terms of accrual and amount of demurrage charged are governed by the rail carrier's tariff, unless the rail carrier and the receiver enter into a private contract governing demurrage, in which case the parties' agreement governs.[15] After finding that Norfolk Southern's Tariff NS 6004-D "applies to NS's relationship with GWSI,"[16] we described the relevant provisions in Norfolk Southern's tariff. These included the Conditions of Carriage incorporated into the tariff, that "Norfolk Southern can levy demurrage charges on its railcars that remain in the Stoney Creek Yard for more than two days after actual or constructive placement," and that the "'demurrage provision . . . will not apply when demurrage rules are provided in contracts or other private agreements.'"[17]

We found that Norfolk Southern expressly agreed to waive demurrage for the time period of January 2012 through February 2015.[18] Norfolk Southern agreed with this finding, even though there was no separate written agreement between the parties memorializing an agreement to waive demurrage during this time period. For the time period after February 2015, we found there was no separate written agreement between the parties to waive demurrage.[19] Accordingly, based on GWSI's pre- and post-trial

---

[15] Doc. No. 54 at 2 (citing 49 C.F.R. § 1333.2).

[16] Doc. No. 53, FOF No. 7.

[17] *Id.*, FOF Nos. 8, 10, 12.

[18] *Id.*, FOF Nos. 56-57; Doc. No. 54 at 3 & n.2; Ex. P-19; Trial Tr. 1/23/17 at 127, 131, 133, 153.

[19] Doc. No. 54 at 2.

assertion of the defenses of waiver and estoppel, we examined whether Norfolk Southern expressly or impliedly waived its right to recover demurrage and/or whether it was estopped from collecting demurrage charges accrued after February 2015. Based on its conduct and representations to GWSI, we concluded that Norfolk Southern had not expressly or impliedly waived demurrage for the time period after February 2015.[20] However, because we found that it had induced GWSI to continue receiving railcars after GWSI had directed it to stop sending railcars if it insisted on charging demurrage and because GWSI detrimentally relied on its conduct, we held that Norfolk Southern was estopped from collecting demurrage after February 2015.[21]

Norfolk Southern filed a timely motion for reconsideration, asserting for the first time that because state law defenses of waiver and estoppel do not apply, it was error to conclude that it was estopped from charging demurrage after February 2015. Although the basis for this argument is not completely clear, Norfolk Southern appears to be contending that once the court found that there was no separate demurrage contract between the parties, its demurrage tariff controlled, precluding state law defenses.

Citing the court's findings that Norfolk Southern had provided notice of its tariff to GWSI, the tariff applied to Norfolk Southern's relationship with GWSI, and no independent contract existed, Norfolk Southern contends that the "Court committed a clear error of law when it applied the defense of estoppel under Pennsylvania law."[22] It

---

[20] *Id.* at 3-5.

[21] *Id.* at 7-10.

[22] Doc. No. 56-1 at 2, 7.

argues that because there was no separate written demurrage contract between the parties, demurrage is "governed by the demurrage tariff of the serving carrier."[23]

Although Norfolk Southern does not claim to be making a federal preemption argument,[24] that is essentially what it argues. It contends that "federal law applies, which requires application of NS's demurrage tariff,"[25] and that the Interstate Commerce Commission Termination Act ("ICCTA") "precludes equitable defenses such as estoppel under state law."[26] It expounds at length about the broad authority Congress has asserted over interstate rail transportation through the enactment of the Interstate Commerce Act in 1887 and as amended in 1995 by the ICCTA, as well as the policies behind these statutes.[27] Norfolk Southern notes that the ICCTA vested the Surface Transportation Board ("STB") with exclusive jurisdiction over rail carrier transportation, and that "the remedies provided ' . . . are exclusive and preempt the remedies provided under Federal or State law.'"[28] Norfolk Southern then cites case law dating from 1918 to 1981 for the proposition that the terms of a rail carrier's demurrage tariff exclusively

---

[23] Doc. No. 58 at 6 (citing 49 C.F.R. § 1333.2).

[24] Norfolk Southern mentions "preempt" or "preemption" only one time in its motion, and that is when it cites 49 U.S.C. § 10501. *See* Doc. No. 56-1 at 6 ("Section 10501 of Title 49 provides that the Surface Transportation Board has exclusive jurisdiction over operating rules and car service rules, and that the remedies provided '. . . are exclusive and preempt the remedies provided under Federal or State law.'").

[25] Doc. No. 58 at 1.

[26] Doc. No. 56-1 at 7.

[27] *Id.* at 4.

[28] *Id.* at 6 (citing 49 U.S.C. § 10501(b)). Notably, Norfolk Southern omits the savings clause in that preemption provision, which states that, "[e]xcept as otherwise provided in *this part*, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b) (emphasis added). As "otherwise provided in" § 10709(c), the "exclusive remedy" for an alleged breach of contract between rail carriers and purchasers of their services is a state court action. *See infra* for a more detailed discussion of § 10709.

govern a party's liability for demurrage charges, and that equitable defenses like estoppel cannot be asserted.[29]  It concludes that our

> decision to apply a state law estoppel defense to an applicable federal rail tariff directly conflicts with extensive precedent and undermines the entire policy of establishing uniformity and predictability in demurrage matters. The decision invites substantial uncertainty with respect to a rail carrier's ability to uniformly and efficiently assess and recover demurrage as mandated by federal statute and the regulations of the STB. This is a clear error of law. If Norfolk Southern's tariff applies, GWSI cannot rely upon Pennsylvania estoppel law as a defense.[30]

Norfolk Southern also contends that our holding that it is estopped from collecting demurrage because it continued to transport railcars to GWSI after GWSI had directed it to stop sending railcars if it insisted on charging demurrage "has created a new defense to demurrage undermining the clear policy goal and purpose of the statute and regulations."[31]  It argues that "GWSI cannot simply direct Norfolk Southern to stop interstate rail transportation [because t]he right to rail carrier transportation belongs to the shipper, not GWSI."[32] Norfolk Southern also notes that "[e]ach car must be treated as a separate transaction and GWSI is required to accept or reject each car individually."[33]  Norfolk Southern concludes that the effect of the estoppel ruling is that "every receiver in the U.S. can simply instruct a rail carrier to stop 'shipping' railcars if it intends to assess and collect demurrage."[34]  Additionally, it contends that because each railcar will no longer be treated as a separate transaction, and "a blanket request to stop

---

[29] Doc. No. 56−1 at 5−6.

[30] *Id.* at 8.

[31] *Id.* at 9.

[32] *Id.* at 8.

[33] *Id.* at 9.

[34] *Id.*

'shipping' all railcars [will] now serve[] as a defense to all demurrage that accrues thereafter."[35]  It warns that

> [r]ail carriers will now need to obtain the agreement of the receiver in advance to accept demurrage for the railcar prior to transporting the car. This not only serves to undermine the effectiveness of 49 U.S.C. § 10746, but will have a profoundly detrimental effect on the fluid movement of railcars in the interstate rail transportation system.[36]

In response to Norfolk Southern's motion, GWSI asserts that it "introduces a novel argument that it failed to raise prior to the Court's judgment in favor of GWSI."[37] Characterizing its position as raising a "choice-of-law" argument, GWSI states that "Norfolk Southern more than just passively agreed that Pennsylvania law applied to GWSI's defenses – it affirmatively argued that Pennsylvania law governed GWSI's defenses. Throughout this litigation, Norfolk Southern was emphatic that GWSI could not meet its burden to prove the defenses of waiver or estoppel under Pennsylvania law."[38]  Because it "never challenged this Court's ability to rule on GWSI's defenses," GWSI argues that Norfolk Southern "waived its novel (and unprecedented) argument and cannot now claim the Court made a clear error of law by applying the very legal standards [it] advanced."[39]

### Standard on a Motion for Reconsideration

A party may move for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." *Schumann v. Astrazeneca Pharm., L.P.*, 769

---

[35] *Id.* at 9−10.

[36] *Id.* at 10.

[37] Doc. No. 57 at 1.

[38] *Id.* at 5, 6.

[39] *Id.* at 2, 11.

F.3d 837, 848 (3d Cir. 2014) (citation omitted).  Under Federal Rule of Civil Procedure 59(e), a judgment may be altered or amended only where: (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is a need to correct a clear error of law or fact, or to prevent manifest injustice.  *Id.* at  848–49 (citation omitted); *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation omitted); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  The decision to alter or amend a judgment is generally discretionary.  *See* 12-59 James Wm. Moore, Moore's Federal Practice § 59.30 (2018) ("Courts have considerable discretion in determining whether to grant or deny a motion to alter or amend[.]"); *see also Creghan v. Procura Mgmt., Inc.*, Civ. A. No. 14-1847, 2014 WL 12605481, at *1 (E.D. Pa. Nov. 19, 2014) (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

A Rule 59(e) motion may not be used to relitigate issues or present arguments that could have been raised prior to judgment, but were not.  *Blystone*, 664 F.3d at 415 (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).  It is not a vehicle to argue new issues that were inexcusably omitted from the original action.  *Romero v. Allstate Ins. Co.*, 170 F. Supp. 3d 779, 783 (E.D. Pa. 2016); *Barrett v. W. Chester Univ. of Pa. of State Sys. of Higher Educ.*, 636 F. Supp. 2d 439, 443 (E.D. Pa. 2009).  Thus, a Rule 59(e) motion may not be predicated on new theories of law.  *See, e.g.*, *Rocco v. Gordon Food Serv.*, 609 F. App'x 96, 98 & n.8 (3d Cir. 2015) (finding no error in district court's decision to deny a Rule 59 motion that raised new legal theories because Rule 59 motions do not present an opportunity to raise new arguments that could or should have been presented prior to judgment); *Kelly v.*

*Borough of Carlisle*, 544 F. App'x 129, 137 n.5 (3d Cir. 2013) (approving the district court's denial of a Rule 59(e) motion that included new legal arguments appellee had at his disposal during the proceedings but failed to include); *see also Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 171 n.2 (3d Cir. 1993) (refusing, like the district court, to consider unconstitutionality argument when it was raised for the first time in a motion for reconsideration).

Additionally, federal courts have a strong interest in the finality of judgments. *Romero*, 170 F. Supp. 3d at 783. Thus, motions under Rule 59(e) are granted sparingly. *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016).

**Discussion**

Norfolk Southern argues that the court "committed a clear error of law when it applied the defense of estoppel under Pennsylvania law after correctly holding that Tariff 6004-D governed the relationship of the parties."[40] It contends that it did not waive the argument that federal law applies and that equitable defenses under state law are precluded. It states that it "has repeatedly argued that its tariff applies and demurrage must be assessed pursuant to federal law," and that under 49 C.F.R. § 1333.2, "'demurrage will be governed by the demurrage tariff of the serving carrier' in the absence of a contract."[41]

Norfolk Southern never made the argument that in the absence of a separate contract between the parties, only federal law applied and that equitable defenses, such as waiver and estoppel, are not available. Early in this litigation, Norfolk Southern expressly claimed that GWSI had "abandoned" its argument that the parties had an

---

[40] Doc. No. 56−1 at 7.

[41] Doc. No. 58 at 1−2.

"independent agreement" to waive demurrage, and acknowledged that instead GWSI was "now relying upon the affirmative defenses of implied waiver and estoppel" brought under Pennsylvania law.[42] Norfolk Southern's contention was *not* that GWSI was not permitted to raise waiver and estoppel defenses because only federal law applied, but rather that GWSI *failed* to meet the evidentiary standards required *to establish the elements of these defenses*. As GWSI aptly puts it, Norfolk Southern "more than just passively agreed that Pennsylvania law applied to GWSI's defenses – it affirmatively argued that Pennsylvania law governed GWSI's defenses."[43]

Norfolk Southern is raising a new legal theory in its motion for reconsideration. Although it knew, well before trial, that GWSI was asserting the state law equitable defenses of waiver and estoppel, Norfolk Southern never argued that GWSI could not raise these defenses because only federal law applied.

Having lost at trial, it cannot re-litigate the case based on a new theory it could have presented before and at trial. *Blystone*, 664 F.3d at 415; *Romero*, 170 F. Supp. 3d at 783. Therefore, Norfolk Southern has waived this argument.

Even if Norfolk Southern had not waived its argument, its motion still fails. Norfolk Southern agrees that if there was an independent demurrage agreement, the terms of that agreement, not its demurrage tariff, govern.[44] Norfolk Southern argues that because the court stated that its tariff governs the parties' relationship and no independent written agreement exists, only the terms of its tariff apply. Thus, according to Norfolk Southern, state law defenses are not applicable.

---

[42] *See, e.g.,* Doc. No. 31 at 9.

[43] Doc. No. 57 at 5.

[44] *See* Doc. No. 58 at 6.

Norfolk Southern is framing the legal dispute incorrectly. The finding that there was no separate written contract between the parties does not bar the equitable defenses of waiver and estoppel.

Equitable estoppel and waiver may be asserted as affirmative defenses in a contract action. *See Belnick, Inc. v. TBB Glob. Logistics, Inc.*, 106 F. Supp. 3d 551, 566-67 (M.D. Pa. 2015); *Manufacturers & Traders Tr. Co. v. Chalpin Dental Assocs., P.C.*, Civ. A. No. 10-7342, 2012 WL 1033862, at *5 (E.D. Pa. Mar. 28, 2012); *In re Indus. Concerns, Inc.*, 289 B.R. 609, 616-17 (Bankr. W.D. Pa. 2003); *In re Im*, 256 B.R. 437, 439–40 (Bankr. E.D. Pa. 2000); *Consol. Rail Corp. v. Canada Malting Co.*, Civ. A. No. 98-5984, 1999 WL 549029, at *6 (E.D. Pa. July 28, 1999); 1 Howard O. Hunter, *Modern Law of Contracts* § 7:33 (2018).

The finding that the parties' relationship was governed by the tariff did not preclude GWSI from raising the defense of equitable estoppel. A successful defense does not mean that a contract existed but that Norfolk Southern is equitably estopped from denying one.

Tariff rates can be modified by private agreement. Section 10709(a) of the ICCTA provides that a rail carrier "may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions." 49 U.S.C. § 10709(a). As the district court in *Dow Chemical Co. v. Union Pacific Corp.*, 8 F. Supp. 2d 940 (S.D. Tex. 1998), observed, "[t]he very purpose of § 10709 is to allow contracting parties to avoid the entire federal regulatory scheme." *Id.* at 942. *See also Babcock & Wilcox Co. v. Kansas City S. Ry. Co.*, 557 F.3d 134, 138 (3d Cir. 2009) (Section 10709 "enable[s] shippers and carriers to sidestep federal

regulation of transportation agreements by entering into private contracts," and the "'exclusive remedy' for actions arising out of those contracts is an action in an appropriate state or federal district court."); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 387 F. Supp. 2d 197, 200–01 (W.D.N.Y. 2005) ("[T]he purpose of § 10709 is to allow parties the ability to alter federal mandates, or to avoid federal control and oversight over rail contracts") (quoting *Dow Chem. Co.*, 8 F. Supp. 2d at 941).

If the parties are capable of supplanting the tariff by agreement, one may allege the existence of a separate agreement. Consequently, one may also raise the defense of equitable estoppel to claim that it believed there was an agreement that varied from the tariff's terms. When it does, that party does not contend that there was a valid agreement, but rather that it relied on the belief that there was an agreement that the other party never intended.

As applied in this case, Norfolk Southern was estopped from asserting that it had not agreed or had not led GWSI into believing that it had agreed not to charge demurrage. Hence, we found that Norfolk Southern, by its conduct, could not deny the existence of an agreement.

As we explained, when a plaintiff, by its conduct, induces the defendant to believe certain facts upon which the defendant relies and acts upon to its prejudice, equitable estoppel precludes the plaintiff from acting differently than the manner in which it induced the defendant to reasonably expect.[45]

---

[45] Doc. No. 54 at 6 (citing *Novelty Knitting Mills v. Siskind*, 457 A.2d 502, 503 (Pa. 1983); *Fessenden Hall of Pa., Inc. v. Mountainview Specialties, Inc.*, 863 A.2d 578, 579 (Pa. Super. 2004); *Homart Dev. Co. v. Sgrenci*, 662 A.2d 1092, 1099 (Pa. Super. 1995)). *See also* 1 Howard O. Hunter, *Modern Law of Contracts* § 6:11 (2018) (where defendant reasonably relies on plaintiff's conduct, which was intended to induce defendant to act to its detriment, equitable estoppel defense estops plaintiff from changing its position to something different from the representation relied on by defendant); Jeff Ferriell,

GWSI raised the affirmative defense of equitable estoppel. It asserted that if the court found no independent contract waiving demurrage charges, Norfolk Southern was estopped from claiming that it had not agreed that GWSI was not liable for demurrage. Although we determined there was no separate contract between the parties that waived demurrage charges, we found that Norfolk Southern had induced GWSI into believing that there was such an agreement, and that GWSI reasonably relied on this belief to its detriment. Thus, we concluded that Norfolk Southern was estopped from claiming that there was no separate agreement to waive demurrage. *See*, *e.g.*, *In re Im*, 256 B.R. 437, 439–40 (Bankr. E.D. Pa. 2000) (where owner of shopping center agreed to lease commercial space to tenant in exchange for tenant's assistance in construction of center, and owner claimed he agreed to an at-will lease while tenant believed the lease covered a five-year period, notwithstanding absence of written lease agreement and court's determinations that lease agreement constituted at-will tenancy and landlord properly terminated lease, court found doctrine of equitable estoppel barred landlord from asserting that the lease constituted an at-will tenancy and was estopped from denying the existence of a five-year lease because the promise of the five-year lease induced debtor to make a substantial investment in construction at the shopping center).

In the context of the ICCTA, district courts have allowed equitable estoppel defenses to be raised where there was no contract separate from the tariff. They permit a party to contend that a rail carrier is equitably estopped from collecting demurrage and freight charges. In *CSX Transportation, Inc. v. Meserole St. Recycling*, 618 F. Supp. 2d 753 (W.D. Mich. 2009), after finding that there was no independent contract or

*Understanding Contracts* § 3.02[A] (3d ed. 2014); E. Allan Farnsworth, *Contracts* § 2.19 at 92-93 (4th ed. 2004).

agreement outside of the carrier's tariffs and bill of lading, the court examined whether

the carrier should be equitably estopped from collecting demurrage and freight charges

from the shippers. *Id.* at 769−70. The shippers argued that the carrier's conduct in its

payment arrangements and other course of dealings with the broker induced them to

believe that they were not liable for the charges. *Id.* at 771-72. Although it ultimately

found that the shippers did not prove that the carrier made any false or misleading

statements or otherwise engaged in any wrongful conduct, it permitted the shippers to

raise the defense of equitable estoppel to the carrier's claim for demurrage and freight

expenses from the shippers under the carrier's tariff. *Id.* at 772.

In another case, in its summary judgment motion the defendant had argued that

it had detrimentally relied on the rail carrier's representations that it would charge a rate

different from the tariff rate. Judge Yohn of this court determined that in the absence of

a separate agreement, the defendant was entitled to assert an equitable estoppel

defense to the rail carrier's claim for freight charges. *Consol. Rail Corp. v. Canada

Malting Co.*, Civ. A. No. 98-5984, 1999 WL 549029 (E.D. Pa. July 28, 1999) (Yohn, J.).

*Our Holding Does Not Create a New Defense to Demurrage*

Norfolk Southern contends that our holding that it is estopped from collecting

demurrage because it continued to transport railcars to GWSI after GWSI had directed it

to stop sending railcars if it insisted on charging demurrage "has created a new defense

to demurrage undermining the clear policy goal and purpose of the statute and

regulations."[46] It argues that "GWSI cannot simply direct Norfolk Southern to stop

interstate rail transportation [because t]he right to rail carrier transportation belongs to

---

[46] Doc. No. 56-1 at 9.

the shipper, not GWSI."[47]  NS also notes that "[e]ach car must be treated as a separate transaction and GWSI is required to accept or reject each car individually."[48]  Norfolk Southern concludes that under the court's estoppel ruling, "every receiver in the U.S. can simply instruct a rail carrier to stop 'shipping' railcars if it intends to assess and collect demurrage."[49]

Norfolk Southern misinterprets our holding.  It does not create a new defense. All carriers need to do is tell the receiver that even if instructed to not ship rail cars, it will still ship them because it is required to do so.  But, that is not what Norfolk Southern did. Instead, it lulled GWSI into a false sense of security.  It led GWSI to believe it was foregoing demurrage charges.

Norfolk Southern also misstates the extent to which private transportation contracts are subject to federal regulation.  Although it concedes that "carriers are now permitted to enter into private contracts pursuant to 49 U.S.C. § 10709," and that the ICCTA "sought to deregulate the rail industry," Norfolk Southern asserts that "the ability to do so does not mean that the preclusive effect of ICCTA is abandoned."[50]  It then cites *Fayus Enterprises. v. BNSF Railway Co.*, 602 F.3d 444 (D.C. Cir. 2010), for the proposition that the ability to enter into private transportation contracts is a "deregulatory move . . .  not an invitation to states to fill the regulatory void created by federal deregulation."[51]  *Id.* at 450.

---

[47] *Id.* at 8.

[48] *Id.* at 9.

[49] *Id.*

[50] *See* Doc. No. 58 at 4.

[51] *Id.*

In *Fayus*, the court examined whether the ICCTA preempted state antitrust and consumer protection law claims, not state contract law claims. It stated that "enforcement of state law *outside of the contract realm* could easily lead to balkanization, with shipments subject to fluctuating rules as they crossed state lines." *Id.* at 452 (emphasis added). On that basis, the court found that Congress did not intend for "non-contract state law [to] intrude into the statutorily preserved shipper-carrier remedies," and that certain claims for "*non-contractual* relief" could be preempted if they "inva[ded] . . . the regulatory domain." *Id.* at 451 (emphasis added).

## Conclusion

Norfolk Southern has waived its argument that the defenses of waiver and estoppel under Pennsylvania law were unavailable and should not have been applied. Even if it had not waived the argument, it fails. Therefore, we shall deny Norfolk Southern's motion for reconsideration.